UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO.: 5:18-CR-00050-TBR

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.

VICTOR EVERETTE SILVERS                                                               DEFENDANT

**MEMORANDUM OPINION & ORDER**

Before the court are numerous pro se motions filed by Defendant Victor Silvers, a prisoner represented by appointed counsel. First, Silvers filed a Motion for a Speedy Trial, DN 58. Later, Silvers filed together a Motion for Brady Materials, a Motion for Rule 16 Discovery Evidence, and a Motion for Discovery under the Jencks Act, DN 64. Most recently, Silvers filed together a Motion to Revoke the Death Penalty, a Motion to Attend Hearing in DC, and a Motion for Trial Date, DN 65. For the reasons stated below, the Motion for a Speedy Trial, DN 58, is DENIED. Silvers's motions at DN 64—for *Brady* materials, for Rule 16 discovery, and for Jencks Act/Rule 26.2 materials—are GRANTED IN PART and DENIED IN PART. The Motion to Revoke Death Penalty, DN 65, is DENIED. The Motion to Attend Hearing in DC, DN 65, is DENIED AS MOOT. The Motion for Trial Date, DN 65, is DENIED.

**I.   Background**

Victor Silvers is before the Court charged with First Degree Murder (premeditated), Attempted First Degree Murder (premeditated), Interstate Domestic Violence, Possession of a Firearm by a Prohibited Person, two counts of Use of a Firearm during the Commission of a Violent Offense, and Violation of a Protection Order. [DN 14]. The Court appointed Silvers the representation of the Federal Public Defender. [DN 5]. The United States has informed the Court

1

that Silvers's case is proceeding through the Department of Justice's Capital Case Review Process to determine whether the government will seek the death penalty.

## II.     Silvers's Pro Se Motions

On November 6, 2020, Silvers filed a motion asking the Court to appoint hybrid representation. [DN 63]. The Court denied the motion on the grounds that Silvers had not demonstrated any special need for hybrid representation and because of the likelihood of procedural complications. *Id*. at 3-4. As the Court has addressed, Silvers has the Sixth Amendment right to conduct his defense on his own or to allow counsel to represent him, but he has no constitutional right to both represent himself and be represented by counsel at the same time. *Wilson v. Hurt*, 29 F. App'x 324, 327 (6th Cir. 2002) (citations omitted). While courts may permit hybrid representation arrangements, *United States v. Mosley*, 810 F.2d 93, 97-98 (6th Cir. 1987), this Court exercised its discretion to deny such an arrangement in this case. [DN 63]. Accordingly, the Court is under no obligation to consider any additional pro se motions Silvers files, and the Court may deny any further pro se motions on the sole basis that the Court has already denied Silvers's request for hybrid representation. However, because Silvers filed the motions addressed herein before the Court denied Silvers's request for hybrid representation, the Court will consider the merits of the pending motions before disposing of them.

## III.    Motion for a Speedy Trial

First is Silvers's Motion for a Speedy Trial, DN 58. In the motion, Silvers states, "I . . . am purs[u]ing my right under the Speedy Trial Act, 18 U.S.C. § 3161, to go to trial within seventy (70) days after the Indictment was filed or my arrest, whichever is later." [DN 58 at 1]. Silvers further states that "I would like to exercise my 'VI Amendment' right to a speedy trial." *Id*. The government responded in opposition. [DN 60]. Silvers did not reply.

### a. Speedy Trial Act

Silvers first asserts his right to go to trial within seventy days after his indictment was filed, a right granted under 18 U.S.C. § 3161(c)(1). The statute states:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

*Id*. The indictment was filed on November 13, 2018, and on December 11, 2018, Silvers entered a plea of not guilty as to all counts of the indictment. [DN 14; DN 24].

While the language of 18 U.S.C. § 3161(c)(1) grants Silvers the right to go to trial within seventy days of the indictment's filing, the Speedy Trial Act provides multiple exceptions and exclusions to its time limits. One time period that should be excluded in computing the time within which a trial must commence is set forth at 18 U.S.C. § 3161(h)(7)(A):

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

*Id*. During telephonic proceedings held on January 10, 2019, the Court declared the case complex and found that the interests of justice required a continuance pursuant to 18 U.S.C. §§ 3161(h)(7)(B)(i), 3161(h)(7)(B)(ii), and 3161(h)(7)(B)(iv). [DN 26]. The Court has repeatedly recognized in further proceedings on the record that the case has been declared

complex, and thus, the ordinary 70-day deadline for commencement of trial under the Speedy Trial Act does not apply. [DN 34; DN 36; DN 38; DN 39; DN 43; DN 52; DN 55; DN 62].

It remains true that this case is complex and the ordinary statutory timeline for proceeding to trial is inapplicable. The factors enumerated at 18 U.S.C. §§ 3161(h)(7)(B)(i), 3161(h)(7)(B)(ii), and 3161(h)(7)(B)(iv) support this conclusion. The complexity of the case has warranted additional time for counsel's preparation for pretrial and trial proceedings, and failing to grant that additional time would result in the miscarriage of justice. Not only is the case a death eligible prosecution subject to the Attorney General's review, but it also involves voluminous discovery and complex forensic reports including DNA, fingerprint, and ballistics analysis. [DN 60 at 7]. As the government states, "neither party has been able to adequately prepare for trial . . . Defense has routinely requested additional time to review the evidence, meet with their client, and confer with the United States as to potential outcomes." *Id*.

In sum, the ends of justice served by continuance of the trial date outweigh the best interests of the public and the defendant in a speedy trial. Specifically, the case is so complex, in view of the nature of the prosecution and the amount and type of discovery involved, that adequate preparation for pretrial proceedings and for trial could not have been and cannot be reasonably done within the Speedy Trial Act's ordinary time limits. To the extent Silvers's motion should be construed as a request that the Court immediately set a trial date, the Court declines to do so at this time, though it anticipates addressing this issue with the parties during its telephonic further proceedings scheduled for January 14, 2021.

### b. Constitutional Speedy Trial Challenge

In addition to raising the Speedy Trial Act in his motion, Silvers also states that "I would like to exercise my 'VI Amendment' right to a speedy trial." [DN 58 at 1]. The Sixth Amendment

to the United States Constitution provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." In determining whether a defendant's right to a speedy trial under the Sixth Amendment has been violated, the Court looks to the four factors set forth by the Supreme Court in *Barker v. Wingo*: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. 407 U.S. 514, 530–33 (1972). The Supreme Court refined the speedy trial violation analysis in *United States v. Doggett*, requiring that courts also balance "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." 505 U.S. 647, 651 (1992). The Sixth Circuit has recognized that none of the factors alone is sufficient to establish a constitutional speedy trial violation, but when there is a violation, "dismissal of the indictment is the only remedy even when it allows a defendant who may be guilty of a serious crime to go free." *United States v. O'Dell*, 247 F.3d 655, 667 (2001) (quoting *Barker*, 407 U.S. at 533).

The Court recognizes that the length of delay in Silvers's trial has been considerable. Silvers was first brought before the Court on October 15, 2018, and his trial date still has not been set. However, the Supreme Court noted in *Doggett* that while lower courts have generally found "postaccusation delay" of a year or more presumptively prejudicial, the one-year mark "simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." 505 U.S. at 671, n.1 (citations omitted). Thus, although the first *Barker* factor weighs in Silvers's favor, it does not establish a Sixth Amendment violation on its own.

As to the reason for the delay and who is to blame for it, the government asserts that "the delay in this case is primarily due to the length of time it took in order to complete discovery . . .

5

the defendant was arrested on the same day that the investigation began . . . the present case was reactive from its inception." [DN 60 at 7]. As the Court also recognized above, the volume and type of discovery at issue has increased the burden on counsel in their preparations. The government has also pointed out that defense counsel has requested additional time to prepare and review discovery during the pendency of the action. *Id*. at 5. Moreover, Silvers is charged with a death eligible offense, the case has been declared complex, and the Court agrees with the government that "defendant would likely be prejudiced if he were required to proceed to a death eligible trial without the benefit of reviewing all of the evidence against him." *Id*. at 7. The Court notes that while the the prosecution has been delayed in part by the Department of Justice's Capital Case Review Process, the government's internal review of Silvers's case is intended to benefit him rather than impose hardship.[1] In addition to these considerations, the coronavirus pandemic has slowed court proceedings and operations across the country since early 2020. Mr. Silvers's case is no exception. Thus, Court finds that the reason for the delay is primarily the complexity of the case, and the blame for the delay is shared by both parties and the global pandemic. As such, the second *Barker* factor weighs against relief.

As to the defendant's assertion of his right to a speedy trial, Silvers earlier filed a motion asking the Court to replace his appointed counsel because he disagreed with her decision to refrain from filing a motion for a speedy trial. [DN 31]. The Court denied the motion as moot for reasons stated on the record *in camera/ex parte*. [DN 37]. Silvers now directly asserts his right to a speedy trial in his motion filed on July 17, 2020. [DN 58]. However, as stated in the Court's order

---

[1] *See* U.S. Department of Justice, Justice Manual, § 9-10.030 ("Purposes of the Capital Case Review Process: The review of cases under this Chapter culminates in a decision to seek, or not to seek, the death penalty against an individual defendant. Each such decision must be based upon the facts and law applicable to the case and be set within a framework of consistent and even-handed national application of Federal capital sentencing laws. Arbitrary or impermissible factors—such as a defendant's race, ethnicity, or religion—will not inform any stage of the decision-making process. *The overriding goal of the review process is to allow proper individualized consideration of the appropriate factors relevant to each case*.") (emphasis added).

6

following telephonic proceedings on January 10, 2019, defense counsel agreed that the case should be declared complex and that a continuance should be granted. [DN 26]. Thus, it appears to the Court that defense counsel and the defendant are at odds on whether the defense should be filing motions regarding the defendant's right to a speedy trial. Even though the defendant has asserted his right to a speedy trial, the Court does not find that the third *Barker* factor weighs in favor of relief given Silvers's disagreement with his counsel on the matter.

Finally, as to prejudice to the defendant, the Supreme Court provided the following guidance for analysis:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532. As regards the third interest, the Court does not find that the defense will be prejudicially impaired by Silvers's incarceration. As to the first interest, the Court does not find that Silvers's pretrial incarceration is oppressive. The severity of the charges alleged against Silvers and the Magistrate Judge's finding that there are no conditions or combination of conditions of release that would reasonably assure the safety of the community or assure the defendant's appearance as required counsels against the Court's finding that Silvers's incarceration is oppressive. [*See* DN 29, Order on Detention Hearing]. Finally, while the Court does not doubt Silvers's anxiety and concern, the other prejudice factors weigh against relief. Therefore, the fourth *Barker* weighs against Silvers's Sixth Amendment speedy trial claim.

As with Silvers's Speedy Trial Act claim, considered above, the Court finds that Silvers's constitutional speedy trial challenge must fail. The indictment will not be dismissed. Accordingly, Silvers's Motion for a Speedy Trial, DN 58, is DENIED.

## IV. Motion for Brady Materials, Motion for Rule 16 Discovery Evidence, and a Motion for Discovery under the Jencks Act and Rule 26.2

On November 16, 2020, Silvers filed a motion requesting Brady materials, Rule 16 discovery, and Jencks Act/Rule 26.2 materials, DN 64. The government has not responded. Local Criminal Rule 47.1 states that a party opposing a motion must file a response within 14 days of service of the motion, and failure to timely file a response may be grounds for granting the motion. LcrR 47.1. Because the time has passed for the government to respond, the motions are ripe. Silvers states:

> Although, the government has provided my counsel and I with a handful of discovery already. We still have reason to believe that the government could possibly be acting in bad faith, by not yet disclosing every piece of discovery within their legal and obligated means. With highlights on their two-year investigation, is now completed.

[DN 64 at 1]. In three sections, Silvers requests (1) "exculpatory evidence and evidence that impeaches a government witness" under *Brady v. Maryland*, 373 U.S. 83 (1963), (2) "all six types of information under Rule 16," and (3) statements of government witnesses under the Jencks Act and Rule 26.2. *Id.* at 1-4. Silvers does not contend that the government is withholding any specific materials, but rather, makes the discovery requests on a general basis, and as stated above, on the basis that he believes the government may be acting in bad faith by withholding information or materials to which the defense is entitled access.

District courts have broad discretion in regulating discovery. *Kebede v. Suntrust Mortg., Inc.*, 612 F. App'x 839, 840 (6th Cir. 2015); *Rhodes v. McDaniel*, 945 F.2d 117, 119 (6th Cir. 1991). The time for requests and disclosure of Rule 16 discovery materials is the time provided by the trial court for pretrial motions, a time agreed upon by the parties, or a time otherwise ordered by the court. Fed. R. Crim. P. 12(b)(3)(E); 12(c); 16(d); 16.1(a). Further, "district courts have the

discretion to order disclosure of *Brady* material at a particular time in advance of trial to 'ensure the effective administration of the criminal justice system' and 'avoid a constitutional violation.'" *United States v. Bell*, No. 17-cr-20183, 2019 WL 3451222, at *4 (E.D. Mich. July 31, 2019) (citations omitted). This Court has previously required government disclosure of *Brady* materials where the defense counsel requested it for use during Capital Case Review Process proceedings. *United States v. Smallwood*, No. 5:08-CR-00038-R, 2009 WL 1734139, at *1 (W.D. Ky. June 18, 2009) ("At this stage of the proceedings *Brady* may not mandate the disclosure of exculpatory evidence. However . . . [w]ithout *Brady* material Defendant could be inhibited in presenting all evidence favorable to the accused that is relevant to whether or not the United States will seek the ultimate punishment."). As to Jencks Act and Rule 26.2 materials, trial courts cannot compel the disclosure of a government witness's statements before the conclusion of the witness's direct testimony. 18 U.S.C. 3500; Fed. R. Crim. P. 26.2(a). Although the government's duty to provide Jencks Act and Rule 26.2 materials applies to some pretrial proceedings and some post-trial proceedings,[2] defendant has not cited, and the Court not discovered, any authority permitting a defendant's discovery of such materials during Capital Case Review Process proceedings.

Here, the Court has yet to set a deadline for pretrial motions, and it is unclear whether Silvers's case has been presented to the Capital Review Committee or whether defense counsel has had an opportunity to argue against the government seeking the death penalty during the Department of Justice's Capital Case Review Process.[3] Accordingly, the Court orders:

(1) If the defense may still make use of the materials Mr. Silvers has requested during the Capital Case Review Process proceedings, the Court orders that the government disclose

---

[2] 18 U.S.C. 3500; Fed. R. Crim. P. 26.2(g).
[3] The Court will confer with the parties regarding whether the Capital Case Review Process proceedings have concluded, and about the timeline of the case, in its telephonic further proceedings scheduled for January 14, 2021.

9

Rule 16 and *Brady* materials within fourteen (14) days of the entry of this order. The government need not disclose Jencks Act and Rule 26.2 materials during such proceedings to the extent those materials exist.

(2) Alternatively, if the Capital Case Review Process proceedings have concluded, the Court will order a time for disclosure of the materials Silvers has requested during its telephonic further proceedings scheduled for January 14, 2021.

Thus, Silvers's motions at DN 64—for *Brady* materials, for Rule 16 discovery, and for Jencks Act/Rule 26.2 materials—are GRANTED IN PART and DENIED IN PART.

### V. Motion to Revoke Death Penalty

Silvers has also moved the court to revoke the death penalty as a sentencing option. [DN 65]. He filed the motion on November 16, 2020. *Id*. The government has not responded. Local Criminal Rule 47.1 states that a party opposing a motion must file a response within 14 days of service of the motion, and failure to timely file a response may be grounds for granting the motion. LcrR 47.1. The time for the government to respond has passed. The motion is ripe for adjudication.

Silvers states: "As you know, the government will be seeking the death penalty recommendation for my case next month on [December 14, 2020]. My request is that you remove that option from the table altogether." [DN 65 at 1]. Silvers has not pointed the Court to any authority it has to grant or even consider such relief during pretrial proceedings. In federal criminal cases, the death penalty is governed by Federal Death Penalty Act of 1994, codified at 18 U.S.C. §§ 3591 to 3599. There, Congress decided that whether a defendant may be subject to the death penalty primarily depends on the type of crime(s) the defendant is charged with, the government's prosecutorial discretion, various mitigating and aggravating factors for consideration by the finder of fact, and a special statutory post-conviction hearing before a court or jury. 18 U.S.C. §§ 3591

to 3599. The statutes do not provide for any discretion to be exercised by the district court in permitting or denying the government to seek the death penalty, Silvers has not pointed the Court to any such authority, and the Court has not discovered any such authority. Accordingly, Silvers's Motion to Revoke the Death Penalty as a potential sentence, DN 65, is DENIED.

### VI. Motion to Attend Hearing in D.C.

Silvers has also moved the Court to allow him to attend the hearing on whether the government will seek the death penalty. [DN 65 at 1]. He filed the motion on November 16, 2020. *Id*. The government has not responded. Local Criminal Rule 47.1 states that a party opposing a motion must file a response within 14 days of service of the motion, and failure to timely file a response may be grounds for granting the motion. LcrR 47.1. The time for the government to respond has passed. The motion is ripe for adjudication.

As Silvers stated in his motion, the hearing was to occur on December 14, 2020.[4] Thus, Silvers's Motion to Attend Hearing in DC, DN 65, is DENIED AS MOOT.

### VII. Motion for Trial Date

Lastly, Silvers moves the Court to set a trial date "[f]or no later than six months of the date you receive this letter." [DN 65 at 3]. Silvers also filed this motion on November 16, 2020. *Id*. The government has not responded. Local Criminal Rule 47.1 states that a party opposing a motion must file a response within 14 days of service of the motion, and failure to timely file a response may be grounds for granting the motion. LcrR 47.1. The time for the government to respond has passed. The motion is ripe for adjudication.

Because the Court anticipates addressing this matter in its telephonic further proceedings scheduled for Thursday, January 14, 2021, the Motion for a Trial Date, DN 65, is DENIED.

---

[4] *See supra* note 3.

## VIII. Conclusion

For the reasons stated herein:

(1) Silvers's Motion for a Speedy Trial, DN 58, is **DENIED**.

(2) Silvers's motions at DN 64—for *Brady* materials, for Rule 16 discovery, and for Jencks Act/Rule 26.2 materials—are **GRANTED IN PART** and **DENIED IN PART**.

(3) Silvers's Motion to Revoke the Death Penalty as a potential sentence, DN 65, is **DENIED**.

(4) Silvers's Motion to Attend Hearing in D.C., DN 65, is **DENIED AS MOOT**.

(5) Silvers's Motion for a Trial Date, DN 65, is **DENIED**.

**IT IS SO ORDERED**.

Thomas B. Russell, Senior Judge
United States District Court

January 13, 2021

cc: counsel