**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CRIMINAL ACTION NO. 5:18-cr-00050-TBR**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**v.**

**VICTOR EVERETTE SILVERS**                                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Victor Silvers's *pro se* Motion to Dismiss the Indictment against him for lack of a speedy trial. [DN 92]. The motion is ripe for adjudication. For reasons stated below, the Motion to Dismiss is **DENIED**.

**I.    Background**

Victor Silvers is before the Court charged with First Degree Murder (premeditated), Attempted First Degree Murder (premeditated), Interstate Domestic Violence, Possession of a Firearm by a Prohibited Person, two counts of Use of a Firearm during the Commission of a Violent Offense, and Violation of a Protection Order. [DN 14]. The Court appointed Silvers the representation of the Federal Public Defender. [DN 5]. The United States informed the Court that Silvers's case is proceeding through the Department of Justice's Capital Review Process to determine whether the government will seek the death penalty. [DN 87]. Parties agreed to extend the deadlines for filing of motions that challenge the Constitutionality of the Death Penalty to November 8, 2021. [DN 91]. Defendant now requests the Court dismiss his indictment, release him from custody, release his property, and compensate him for his time incarcerated based on both violations of the Speedy Trial Act and of his Sixth Amendment Right to a speedy trial. [DN

92]. This Order is largely a reiteration of the Court's denial of Defendant's Motion for a Speedy Trial, [DN 58], in a prior Memorandum Opinion and Order. [DN 67].

## II. Discussion

### A. The Speedy Trial Act

Silvers argues that the Court should dismiss the indictment along with his other requests under the Speedy Trial Act. 18. U.S.C. § 3161. "The Act requires dismissal of a criminal case, with or without prejudice, if the defendant is not tried seventy days after his indictment or the date he first appears in court, whichever date last occurs." *United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir.1996). The indictment was filed on November 13, 2018, and on December 11, 2018, Silvers entered a plea of not guilty as to all counts of the indictment. [DN 14; DN 24]. However, the Speedy Trial Act provides multiple exceptions and exclusions to its time limits. One time period that should be excluded in computing the time within which a trial must commence is set forth at 18 U.S.C. § 3161(h)(7)(A):

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

*Id.* During telephonic proceedings held on January 10, 2019, the Court declared the case complex and found that the interests of justice required a continuance pursuant to 18 U.S.C. §§ 3161(h)(7)(B)(i), 3161(h)(7)(B)(ii), and 3161(h)(7)(B)(iv). [DN 26]. The Court has repeatedly recognized in further proceedings on the record that the case has been declared complex, and thus, the ordinary seventy-day deadline for commencement of trial under the Speedy Trial Act does not

apply. [DN 34; DN 36; DN 38; DN 39; DN 43; DN 52; DN 55; DN 62; DN 68; DN 69; DN 78; DN 82; DN 85; DN 89].

Silvers argues that, as of September 1, 2021, eighty-five (85) days could be considered "non-excludable" and therefore he is entitled to dismissal. [DN 92]. He calculates this number by using the dates October 15, 2018 to December 11, 2018 (fifty-seven days) and July 9, 2021 to August 6, 2021 (twenty-eight days). *Id.* First, "[t]he plain language of the [Speedy Trial Act] requires a not guilty plea to begin the clock running." *United States v. Sutton*, 184 F. Supp. 3d 503 (E.D. Ky. 2016), aff'd, 862 F.3d 547 (6th Cir. 2017) (citing *United States v. O'Dell*, 154 F.3d 358, 360 (6th Cir.1998)). This means that his calculations should start December 11, 2018, the day Silvers pleaded not guilty, not October 15, 2018, the date of his arrest. [DN 14; DN 4]. That would eliminate the first fifty-seven (57) days of Silvers's calculation, but even including the time between December 11, 2018 and January 10, 2019, the date that the case was declared complex, only about fifty-eight (58) days in the Speedy Trial period have elapsed. [DN 26]. That is the thirty days (30) between his not guilty plea and the date the Court declared the case complex and the twenty-eight (28) days between July 9, 2021, and August 6, 2021, which is below the seventy-day requirement. Thus, the motion to dismiss is denied because seventy includable days have not passed since Silvers's nonguilty plea. *See United States v. Saeed-Watara*, No. CRIM.A.3:09CR118H, 2009 WL 4782735 (W.D. Ky. Dec. 9, 2009).

To decrease the number of eligible days even further, on July 9, 2021, after a telephonic proceeding held on July 2, 2021, where "the parties indicated that the instant case may be re-presented to the United States Department of Justice Capital Review Committee for reevaluation of whether the government will seek the death penalty" the Court urged "the defense to move as expediently as possible" if it wanted to "re-present the case to the Capital Review Committee."

3

[DN 87]. Though the order did not explicitly state that the period to do so was excluded from the time allowed for a speedy trial, the Court finds that "the ends of justice served by granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(B)(iv). As discussed above, the Court has repeatedly declared the case complex and unable to use the standard seventy-day requirement. Additionally, based on the same telephonic proceedings, the Court filed a Scheduling Order for the remainder of the case, which included the date for trial. [DN 88]. Subsequently, just one day before the present motion was filed and upon the Defendant's request, the Court granted an extension for filing of motions challenging the Constitutionality of the Death Penalty to November 8, 2021. [DN 91].

It remains true that this case is complex and the ordinary statutory timeline for proceeding to trial is inapplicable. The factors enumerated at 18 U.S.C. §§ 3161(h)(7)(B)(i), 3161(h)(7)(B)(ii), and 3161(h)(7)(B)(iv) support this conclusion. The complexity of the case has warranted additional time for counsel's preparation for pretrial and trial proceedings and failing to grant that additional time would result in the miscarriage of justice. Not only is the case a death eligible prosecution subject to the Attorney General's review, but it also involves voluminous discovery and complex forensic reports including DNA, fingerprint, and ballistics analysis. [DN 60 at 7]. As the government states, "neither party has been able to adequately prepare for trial . . . Defense has routinely requested additional time to review the evidence, meet with their client, and confer with the United States as to potential outcomes." *Id.*

The Court has regularly conducted status conferences to aid the progress of this case. Defendant has regularly agreed to exclude that time for purposes of the Speedy Trial Act. While there has been a significant delay in this case, the delay is justified as multiple proceedings have been conducted, several initiated by Defendant, in furtherance of preparing this case for trial. As

4

stated above, the ends of justice served by continuance of the trial date outweigh the best interests of the public and the defendant in a speedy trial. Specifically, the case is so complex, in view of the nature of the prosecution and the amount and type of discovery involved, that adequate preparation for pretrial proceedings and for trial could not have been and cannot be reasonably done within the Speedy Trial Act's ordinary time limits. The Court has set a trial date for June 27, 2022; dismissal for Speedy Trail Act reasons before that date for would be improper.

### B.  Sixth Amendment Right to a Speedy Trial

In addition to raising the Speedy Trial Act in his motion, Silvers also asserted that his Sixth Amendment speedy trial right has been violated. [DN 92]. The Sixth Amendment to the United States Constitution provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." In determining whether a defendant's right to a speedy trial under the Sixth Amendment has been violated, the Court looks to the four factors set forth by the Supreme Court in *Barker v. Wingo*: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. 407 U.S. 514, 530–33 (1972). The Supreme Court refined the speedy trial violation analysis in *United States v. Doggett*, requiring that courts also balance "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." 505 U.S. 647, 651 (1992). The Sixth Circuit has recognized that "[n]one of these factors alone is enough to establish a violation and the court is to conduct a balancing analysis that considers each of these factors along with such other circumstances that may be relevant." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir.2007).

5

The Court recognizes that the length of delay in Silvers's trial has been considerable. Silvers was first brought before the Court on October 15, 2018, and his trial date is set for June 27, 2022. However, the Supreme Court noted in *Doggett* that while lower courts have generally found "postaccusation delay" of a year or more presumptively prejudicial, the one-year mark "simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." 505 U.S. at 671, n.1 (citations omitted). Thus, although the first *Barker* factor weighs in Silvers's favor, it does not establish a Sixth Amendment violation on its own.

As to the reason for the delay and who is to blame for it, the government asserts that "the delay in this case is primarily due to the length of time it took in order to complete discovery . . . the defendant was arrested on the same day that the investigation began . . . the present case was reactive from its inception." [DN 60 at 7]. As the Court also recognized above, the volume and type of discovery at issue has increased the burden on counsel in their preparations. The government has also pointed out that defense counsel has requested additional time to prepare and review discovery during the pendency of the action. *Id*. at 5. Moreover, Silvers is charged with a death eligible offense, the case has been declared complex, and the Court agrees with the government that "defendant would likely be prejudiced if he were required to proceed to a death eligible trial without the benefit of reviewing all of the evidence against him." *Id*. at 7. The Court notes that while the prosecution has been delayed in part by the Department of Justice's Capital Case Review Process, the government's internal review of Silvers's case is intended to benefit him rather than impose hardship.[1] Further, extensions have been granted for Defendant to file constitutionality challenges to the death penalty. [DN 91].

---

[1] *See* U.S. Department of Justice, Justice Manual, § 9-10.030 ("Purposes of the Capital Case Review Process: The review of cases under this Chapter culminates in a decision to seek, or not to seek, the death penalty against an individual defendant. Each such decision must be based upon the facts and law applicable to the case and be set within a framework of consistent and even-handed national application of Federal capital sentencing laws. Arbitrary

Silvers argues in his motion that "[e]verything that the government has done post-investigation, should be considered as [sic] 'deliberate attempt[s]'" to hamper the defense. [DN 92]. He asserted that the delays were a "psychological yet very effective tactic employed by the government to influence and increase [his] anxiety and concern." *Id.* The Court respectfully disagrees. Each extension of time, both by the government and the defense counsel, have been to ensure that Silvers is granted a just and fair trial. The seriousness of the alleged crime, in combination with the potential for capital punishment, make this a complex case for both parties that the court must deliberately safeguard to ensure it is executed properly. To do so, a speedy trial of seventy days, is not plausible. In addition to these considerations, the coronavirus pandemic has slowed court proceedings and operations across the country since early 2020. Mr. Silvers's case is no exception. Thus, Court finds that the reason for the delay is primarily the complexity of the case, and the blame for the delay is shared by both parties and the global pandemic. As such, the second *Barker* factor weighs against relief.

As to the defendant's assertion of his right to a speedy trial, Silvers earlier filed a motion asking the Court to replace his appointed counsel because he disagreed with her decision to refrain from filing a motion for a speedy trial. [DN 31]. The Court denied the motion as moot for reasons stated on the record *in camera/ex parte*. [DN 37]. Silvers directly asserted his right to a speedy trial in his motion filed on July 17, 2020. [DN 58]. However, as stated in the Court's order following telephonic proceedings on January 10, 2019, defense counsel agreed that the case should be declared complex and that a continuance should be granted. [DN 26]. Additionally, the current motion to dismiss was filed *pro se* by the Defendant only a day after the Court granted the

---

or impermissible factors—such as a defendant's race, ethnicity, or religion—will not inform any stage of the decision-making process. *The overriding goal of the review process is to allow proper individualized consideration of the appropriate factors relevant to each case.*") (emphasis added).

Defendant's motion for an extension of time to file his constitutional challenges. [DN 91; DN 92]. Thus, it appears to the Court that defense counsel and the defendant are at odds on whether the defense should be filing motions regarding the defendant's right to a speedy trial. Even though the defendant has asserted his right to a speedy trial, the Court does not find that the third *Barker* factor weighs in favor of relief given Silvers's disagreement with his counsel on the matter.

Finally, as to prejudice to the defendant, the Supreme Court provided the following guidance for analysis:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532. Regarding the third interest, the Court does not find that the defense will be prejudicially impaired by Silvers's incarceration. As to the first interest, the Court does not find that Silvers's pretrial incarceration is oppressive. The severity of the charges alleged against Silvers and the Magistrate Judge's finding that there are no conditions or combination of conditions of release that would reasonably assure the safety of the community or assure the defendant's appearance as required reiterates the Court's finding that Silvers's incarceration is not oppressive. [*See* DN 29]. Finally, while the Court does not doubt Silvers's anxiety and concern, and is sympathetic to the difficulties he is facing, the other prejudice factors weigh against relief. Therefore, the fourth *Barker* weighs against Silvers's Sixth Amendment speedy trial claim. As with Silvers's Speedy Trial Act argument, considered above, the Court finds that Silvers's constitutional speedy trial challenge must fail.

8

### III.    Conclusion

For the reasons state above, Defendant's Motion to Dismiss Indictment, DN 92, is **DENIED**.


**IT IS SO ORDERED**.


**Thomas B. Russell, Senior Judge**
**United States District Court**

October 6, 2021


cc: counsel